UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NOTHERN DIVISION
ASHLAND

CASE NO. 0:20-MJ-06-DLB-EBA

IN THE MATTER OF THE SEIZURE OF CONTENTS OF ACCOUNT XXXX6729 UP TO $9,723,822.00 IN THE NAME OF KAREN DENISE HABLE TRUST AT BB&T/TRUIST

\* \* \* \* \*

### GOVERNMENT'S RESPONSE TO MOTION TO DISMISS

\* \* \* \* \*

Likely perceiving the lack of merit in her original objections, Karen Denise Smith chose not to follow the Court's Order to "file a written reply" in support of the objections. [R. 11: Order at 43; *see also* R. 15: Order at 57 (requiring a reply).] Instead, Smith filed a "motion to dismiss the seizure warrant issued on April 8, 2020 for failure to state a claim." [R. 16: Motion at 58.] The motion is equally meritless.

*First*, the problem of movant identity persists. Smith, acting *in propria persona*, filed the current motion, reflecting her continued understanding that the Trust cannot act in federal court without an attorney. [*Id.*] But, as the government previously observed, "the current movant (Smith, as representative of the trustee) and the original objector (the Trust itself) are different people / entities. The money was seized out of the Trust's account, not Smith's or the trustee's. If any entity is arguably entitled to [the motion-requested relief] at this point, it would be the Trust, which has not requested it." [R. 14: Response at 53.] The Court should, again, "not permit Smith" to litigate this motion

1

"when neither Smith nor the trustee has any pending objection before the Court, and the Trust's objections fail for the simple reason that it can only act in federal court through licensed counsel." [*Id.*]

*Second*, the only legal basis Smith states for the motion is Fed. R. Crim. P. 12(b)(2). [R. 16: Motion at 62.][1] Rule 12(b) generally regulates "pretrial motions." As Smith thinks relevant, a "motion that the court lacks jurisdiction may be made at any time while the case is pending." Fed. R. Crim. P. 12(b)(2). Contrary to her assertion, this rule does not "establish[]" a "procedural means for challenging the sufficiency of a seizure warrant[.]" [R. 16: Motion at 62.] Instead, this straightforward provision permits an alleged lack of jurisdiction to be raised "at any time while the case is pending." "The case," as used in this rule, refers to a charged criminal case; at a minimum, the United States is aware of (and Smith cites) no law suggesting otherwise. *See, e.g.*, *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) ("Federal Rule of Criminal Procedure 12(b)(2) *authorizes dismissal of an indictment* if its allegations do not suffice to charge an offense, but such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." (emphasis added)); *Universal Milk Bottle Serv. v. United States*, 188 F.2d 959, 962 (6th Cir. 1951) (same principle). Accordingly, Rule 12(b)(2) does not provide a procedural mechanism to challenge a seizure warrant pre-indictment and mid-investigation. At least for purposes of Rule 12(b)(2), there currently is no "case . . . pending" over which Smith may assert "the court lacks jurisdiction[.]"

---

[1] Smith also once invokes Rule 4(a), which has no apparent relevance here. [R. 16: Motion at 58.]

In any event, none of Smith's substantive arguments actually go to jurisdiction. [*See* R. 10: Response at 41 n.5.] Rather, Smith simply challenges the propriety of warrant issuance—in essence, the existence of probable cause. Thus, even if Rule 12(b)(2) did open the door to motions like this one, Smith's still fails to come within the textual auspices of the rule.

*Third*, and recognizing that uncounseled submissions are to be liberally interpreted, the Court could, as before, construe the improper motion to dismiss as either a pre-indictment motion to suppress or pre-indictment motion to return property. [R. 10: Response at 34-39.] If the Court does so, the construed motion fails for the non-merits reasons previously stated. [*See id.*]

*Fourth*, the motion fails on the merits. The affidavit established probable cause to believe that Smith violated 18 U.S.C. §§ 641, 1341, and 1343. U.S. Const. amend. IV. [R. 1 at ¶¶ 3, 6, 10-15.] "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion" and equates to "a fair probability" standard. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc). Probable cause is, thus, "not a high bar to clear." *Id.*

Section 641 criminalizes knowingly "embezzl[ing], steal[ing], purloin[ing], or . . . convert[ing] to h[er] use or the use of another . . . any record, voucher, money, or thing of value of the United States or of any department or agency thereof" in an amount over $1,000. *See United States v. Hall*, 549 F.3d 1033, 1038 (6th Cir. 2008); *United States v.*

3

*Jeter*, 775 F.2d 670, 679 (6th Cir. 1985).  Section 1341, mail fraud, punishes "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, [and] for the purpose of executing such scheme or artifice . . ., places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing[.]"  *See United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006).  Section 1343, wire fraud, punishes "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice[.]"  *See United States v. Prince*, 214 F.3d 740, 748 (6th Cir. 2000).

   The affidavit establishes probable cause as to each statute.  As to § 641, the affidavit describes the money, or thing of value of the United States or of any department or agency thereof, as $9,723,822 of government / IRS money.  [R.1 at ¶ 14.]  This amount is over $1,000.  The affidavit further details Smith's embezzling, stealing, purloining, or converting to her use or the use of another.  It describes how Smith, in

4

concert with others, submitted a fabricated tax return fraudulently claiming a refund of $9,723,822. [*Id.* ¶ 11.] It describes that, after and based on a review of IRS records, "the return is wholly fictitious" because, essentially, there are no records substantiating Smith's falsely claimed interest income or withholdings. [*Id.* ¶ 12.] The affidavit states that, "[b]ased on the fictitious filing," the IRS issued the claimed refund and mailed the check, which was deposited into the Trust's account. [*Id.* ¶ 14.] Thus, by fraudulently claiming a tax refund based on wholly fictitious information and depositing the resulting check, Smith embezzled, stole, purloined, or converted $9,723,822.

As to mail and wire fraud, the scheme or artifice to defraud is the same plot just described, which Smith, in concert with others, devised and willfully participated in. The scheme, involving the deceitful submission of a wholly false tax return, shows Smith's intent to deprive the IRS and the government of money and property. *See United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003). As to § 1341, the requisite involvement with the mail is the IRS mailing the tax refund check, and Smith receiving the mailed check. [R. 1 at ¶ 14.] As to § 1343, the requisite wire communication was the electronically-filed tax return. [R. 1 at ¶ 10.] Smith's use of the mail and wires was for the purpose of executing and furthered the ploy because, as the affidavit described, the covin would not have otherwise have been successful without wire and mail interaction with the IRS and other entities. *See United States v. Warshak*, 631 F.3d 266, 310-11 (6th Cir. 2010). Smith's canards—falsely asserting interest income and withholding amounts, and fraudulently claiming $9,723,822 in a refund—were material because they, as the affidavit set out, caused and induced the IRS to issue and mail the refund check. *See*

*Neder v. United States*, 527 U.S. 1, 25 (1999).[2]

*Parr v. United States*, 363 U.S. 370 (1960), which Smith cites, stands for the general proposition that the mailing, for purposes of § 1341, must play more than a minimal role in the execution of the scheme. *See United States v. Maze*, 468 F.2d 529, 532 (6th Cir. 1976). [R. 16: Motion at 64.] Here, unlike *Parr*, the mailing was "part of" Smith's scheme, not "incidental and collateral to" it. *Maze*, 468 F.2d at 534; *see also United States v. Oldfield*, 859 F.2d 392, 402 (6th Cir. 1988) ("Unlike *Parr*, the mailing[] here occurred as a result of the fraudulent scheme."). Smith had not obtained any money until the mailing occurred; the mailing was, thus, central and essential to Smith's machinations and was caused by (and resulted from) Smith's subterfuge. *Maze*, 468 F.2d at 534; *see also United States v. Campbell*, 485 F. App'x 88, 91 (6th Cir. 2012) ("[A] fraudulent scheme is not complete until the perpetrator has secured the benefits of the scheme.").

Smith may factually contest some of the affidavit's assertions, but the time to air those theories is at trial, after indictment, not in a pre-indictment "motion to dismiss" a seizure warrant. [*See, e.g.*, R. 16: Motion at 63 ("Smith did not intend to deprive a victim . . . of money or property.").] The Court will not divine the truth of Smith's intent, or the truth of any other contested factual issue, here; instead, the Court merely evaluates if the affidavit established probable cause—a reasonable basis to believe—that Smith violated the law. *See United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009). The

---

[2] Smith's distinct First Amendment redress-of-grievances argument is meritless. *United States v. Kuball*, 976 F.2d 529, 531-32 (9th Cir. 1992). [R. 16: Motion at 65.]

affidavit should leave no reasonable question that probable cause existed.

But even if the Court determined that the affidavit did not establish probable cause, the good faith exception would save the seizure. The question in the good-faith-exception context is "whether a reasonably well trained officer would have known that the [seizure] was illegal despite the magistrate's decision." *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020). Essentially, for a seizure pursuant to a seizure warrant to not survive good-faith review, "the affidavit must be so lacking in indicia of probable cause as to make an officer's belief in its existence objectively unreasonable." *Id.*

For the reasons described more thoroughly above, even if the probable cause question is debatable, there should be no question that the affidavit was "sufficiently meaty to avoid being labeled bare bones." *Id.* at 764. The affidavit did far more than merely "state[] suspicions, or conclusions, without providing some underlying factual circumstances[.]" *Id.* at 763. It described Smith's background and detailed the facts of the scheme to defraud, which (at the risk of monotony) involved submission of a wholly fraudulent and fictitious tax return that resulted in an illegitimate refund check of $9,723,822. Every reasonable officer would not have known, in these circumstances, to second-guess Judge Atkins's seizure authorization. The good-faith exception, thus, applies and requires non-dismissal of the seizure warrant. Smith, the movant, nowhere addresses the good-faith exception or meets these arguments.

This would, in addition, be "a particularly egregious case to misapply the good-faith exception given the utter lack of police wrongdoing." *Christian*, 925 F.3d at 313. After all, suppression (or, in this awkward context, dismissal) "is designed to deter police

misconduct rather than to punish the errors of judges and magistrates." *Id.* Granting Smith's motion "would unduly exalt the Fourth Amendment interest marginally served by deterring nonculpable conduct over the public interest in combatting crime—and would amount to effective disregard of Supreme Court [and Sixth Circuit] precedent[.]" *Id.* at 313-14.[3]

For these independent and alternative reasons, the Court should deny the motion to dismiss.

Respectfully Submitted,

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

By:  s/ James T. Chapman
     Special Assistant U.S. Attorney
     260 W. Vine Street, Suite 300
     Lexington, Kentucky 40507-1612
     (859) 685-4804
     James.Chapman2@usdoj.gov

---

[3] In the Conclusion section, Smith includes an offhand reference to Civil Rule G, which governs civil forfeiture actions in rem. [R. 16: Motion at 66.] Rule G does not apply in this context. *United States v. McNee*, No. 2:12-CR-4-DB, 2014 WL 4278845, at *1 (D. Utah Aug. 29, 2014).

<u>CERTIFICATE OF SERVICE</u>

On October 21, 2020, I electronically filed this document through the ECF system, and I mailed this document (mirroring her representation) to:

> Karen Smith A.R.
> For the Karen Denise Hable Trust
> 1580 Crane Creek Road
> Grayson, KY 41143

>> s/ James T. Chapman
>> Special Assistant U.S. Attorney